UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

April 26, 2013

LETTER TO COUNSEL:

      RE: *Tammy Copes v. Commissioner, Social Security Administration*;
            Civil No. SAG-11-3487

Dear Counsel:

On December 5, 2011, the Plaintiff, Tammy Copes, petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 13, 15). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Ms. Copes filed her claims for benefits on August 22, 2008, alleging disability beginning on July 15, 2008. (Tr. 130-42). Her claims were denied initially on January 9, 2009, and on reconsideration on July 31, 2009. (Tr. 56-60, 62-65). A hearing was held on June 21, 2010 before an Administrative Law Judge ("ALJ"). (Tr. 22-51). Following the hearing, on September 15, 2010, the ALJ determined that Ms. Copes was not disabled during the relevant time frame. (Tr. 9-21). The Appeals Council denied Ms. Copes's request for review (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Copes suffered from the severe impairments of osteoarthritis, history of clubfoot, bipolar disorder I, and history of polysubstance abuse. (Tr. 14). Despite these impairments, the ALJ determined that Ms. Copes retained the residual functional capacity ("RFC") to:

> [P]erform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), in which she can lift and carry 10 pounds frequently, 20 pounds occasionally, stand/walk and sit[] 6 hours in an 8 hour day; balance occasionally; and avoid concentrated exposure to temperature changes. The claimant can understand, remember and execute detailed instructions. She can concentrate and pay attention at a level of complexity when given customary breaks. She can perform within a schedule, start work on time, and produce work with breaks permitted by an employer.

(Tr. 17). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Copes could perform her past relevant work and other jobs that exist in significant numbers in the national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 19-20).

Ms. Copes presents two primary arguments on appeal: (1) that the ALJ erroneously assessed her RFC; and (2) that the ALJ presented a flawed hypothetical to the VE. Each argument lacks merit.

Ms. Copes's challenge to her RFC has six subparts. First, she contends that the ALJ failed to include any limitation related to bipolar disorder in her RFC. However, an ALJ is not required to include a corresponding limitation for each severe impairment. Ms. Copes does not allege any particular functional limitation, resulting from bipolar disorder, that the ALJ failed to include. The ALJ appropriately assessed Ms. Copes's mental limitations and included the necessary restrictions in the RFC.

Second, Ms. Copes alleges that the ALJ failed to properly evaluate the opinion of her treating psychologist, Dr. Chris Garner. Pl Mot. 6-7. As described below, with respect to the state agency consultants, the relevant portion of the opinion is not the "moderate limitations" checked in Section I, but the written elaboration in Section III. (Tr. 454-55) (Dr. Garner adopted his remarks in Section II as his Section III Functional Capacity Assessment). In Section II, Dr. Garner provided only a brief elaboration: "Pt if she is on her meds can perform as above – if she is off her meds everything would be a 3 [Marked Limitation]. She needs limited hours." (Tr. 455). The ALJ in fact assigned "great weight" to Dr. Garner's assessment that Ms. Copes had moderate limitations in concentration, persistence and pace. (Tr. 18). The ALJ further reviewed and summarized Dr. Garner's treatment notes. *Id.* Although the ALJ did not address the cursory statement that "she needs limited hours[,]" I cannot find that failure to be reversible error. Dr. Garner did not provide any explanation for the "limited hours" restriction, and none of the other reviewing physicians or consultative evaluators suggested that Ms. Copes would be unable to work a traditional day. Given the substantial evidence supporting the ALJ's determination, the implicit rejection of Dr. Garner's suggestion that Ms. Copes could only work a partial day is permissible.

Third, Ms. Copes submits that the ALJ failed to consider adequately the opinion of the state agency consultants, Dr. Rotman and Dr. Peterson. Ms. Copes is correct that those two doctors checked certain "moderate limitations" in Section I of their opinions, and that the ALJ did not include all of those limitations in her RFC or her hypothetical. (Tr. 385-88, 436-39). However, the relevant portion of the physicians' opinions is not Section I, which sets forth a series of "check the box" rankings, but Section III, which provides a detailed narrative functional capacity assessment. *See* Program Operations Manual System DI 24510.060B (Mental Residual Functional Capacity Assessment). Because Section I does not include the requisite level of detail to inform the ALJ's opinion, an ALJ need not address each of the Section I limitations, and need not include each of those limitations in the hypothetical to the VE. *See, e.g., Andrews v. Astrue*, Civil No. SKG-09-3061, slip op. at *39 (D. Md. Oct. 25, 2011) (noting that "even if the

ALJ had not explicitly addressed each of the mental function limitations appearing on Section I of the mental RFCA, he was not required to do so."). Section III of the physicians' opinions comport with the ALJ's findings of moderate limitations in concentration, persistence and pace, but the residual functional capacity to maintain employment. *See* (Tr. 387) ("Although this clmt has a mood disorder and history of cocaine abuse she presents as stable and clearly capable of sustaining in work activities if she abstains from drugs."); (Tr. 438) ("The claimant has moderate limitations in Sustained Concentration and Persistence due to mental health issues as detailed on the PRTF . . . Overall, the claimant's limitations are not incompatible with the ability to be employed in the competitive marketplace.").

Fourth, Ms. Copes contends that the ALJ failed to address the GAF scores noted by a treating nurse, Nurse Gootee. There are several problems with this argument. First, Nurse Gootee assigned an identical GAF score of 40 over time, regardless of the corresponding treatment notes from that appointment. (Tr. 248, 252, 259, 282, 291, 310, 323, 332, 351, 492). The pattern suggests that the evaluation of the GAF scores may have been less than rigorous, or that Ms. Copes's original GAF score was automatically carried over on subsequent versions of standardized forms. Second, Nurse Gootee is not an acceptable medical source. *See* SSR 06-03p. Information from such professionals may provide insight into the severity of an impairment, but they "cannot establish the existence" of a disabling impairment. *Id.* at *2. Finally, GAF scores, even when reliable and from acceptable medical sources, do not govern an ALJ's analysis. "[A] GAF score is not determinative of whether a person is disabled. Rather, the Social Security Administration does not endorse the use of the GAF in Social Security and SSI disability programs, and it does not directly correlate to the severity requirements in the mental disorders listings." *Melgarejo v. Astrue,* Docket No. 08–cv–3140–JKS, 2009 WL 5030706, at *2 (D.Md. Dec.15, 2009) (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50746-01, 50764-65 (Aug. 21, 2000)). The ALJ's failure to evaluate Nurse Gootee's assigned GAF scores therefore does not warrant remand.

Ms. Copes's fifth argument is that the ALJ failed to provide a "more detailed" assessment of her capacity to perform the mental demands of work while assessing her RFC. Pl. Mot. 12-14. Ms. Copes's argument consists almost entirely of lengthy excerptions from a Social Security ruling and regulation, with the exception of a single, unexplained transcript citation on page 14 to Dr. Rotman's Mental Residual Functional Capacity (MRFC) form indicating that Ms. Copes has just six areas of moderate limitation. (Tr. 385-86). Ms. Copes provides no analysis of how a "more detailed" assessment of that form, or any other evidence, might have resulted in a different outcome. The ALJ's RFC determination provides substantial evidence to support her assessment that Ms. Copes would be capable of gainful employment. (Tr. 19) (citing "the psychological notes from treating sources finding the claimant has only moderate limitations in concentration, persistence and pace, and improvement of symptoms while on medication; Dr. Harhani and Zamani's consultative opinions; the DDS psychological and physical evaluations, and the claimant's reported activities of daily living."). Remand is therefore unwarranted.

Sixth, Ms. Copes argues that her RFC lacked any limitation to address her moderate difficulties in maintaining concentration, persistence, or pace. The finding of a moderate

impairment in concentration, persistence, and pace does not indicate that restrictions other than a limitation to unskilled work would be necessary. *See, e.g., Bell v. Astrue,* No. 8:07–cv–00924–JKS, slip op. at *8 (D. Md. Mar. 12, 2008) ("Even a finding of moderate impairment in a particular broad functioning area does not automatically indicate that a claimant's condition will significantly impact his or her ability to perform work-related functions.") (citations omitted). Again, Ms. Copes has not proposed any particular limitation that she believes to be lacking, and the ALJ's restriction to unskilled work is supported by substantial evidence.

Ms. Copes's final argument is that the ALJ presented a deficient hypothetical question to the VE. The ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations. *See Copeland v. Bowen*, 861 F.2d 536, 540–41 (9th Cir. 1988). The ALJ's hypothetical question to the VE, which accurately incorporated the RFC assessment she made, was permissible without including any additional limitations that the ALJ did not deem valid. Ms. Copes's specific alleged deficiencies are derived from Part I of the state agency physicians' opinions and the report from Dr. Garner. Those issues were addressed above, and the ALJ's determination on each issue was found to be supported by substantial evidence. Therefore, the ALJ's hypothetical question was sufficient.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 13) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 15) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge